UPTON v. THE STATE OF IOWA.

To convict a party of aiding to conceal stolen property, under section 2621 of the Code, the evidence must show that he assisted to *hide* the property, in order to elude pursuit, or to avoid discovery.

The testimony of an accomplice, must be corroborated by evidence tending to connect the defendant with the commission of the offence charged.

Where on the trial of an indictment for aiding to conceal stolen property, the only evidence tending to connect the defendant with the commission of the offence, was the following: "Myself and R. *set* two horses in Missouri. We came up through Iowa, through Davis county, and stopped at defendant's. It was about 'sun up.' We rode up and spoke. Defendant was standing in the yard. He said to R., where did you *set* them horses? R. answered, in Missouri. We then asked him, if we could get breakfast, and our horses fed. He said, we could. We got off—our horses were put in the stable and fed. We then went into the house. Breakfast was got by Mrs. U. · We—that is, R. and myself—laid down and slept awhile—perhaps an hour. Defendant sent his boy to J's. for a saddle for me. The last place I saw J., was over in Ottumwa, in custody of the law. When we got up, J. was there, and told us, in presence of defendant, that that was a dangerous place, and we had better leave there. We left after we got our breakfasts. The word *set* means stealing. When R. said, we *set* the horses, he meant we stole them;" *Held*, That the evidence was insufficient to convict the defendant.

*Appeal from the Davis District Court.*

MONDAY, JANUARY 18, 1858.

. Indictment for aiding to conceal stolen property. At the August term of the district court for Davis county, 1857, the defendant was found guilty, and his motion for a new trial being overruled, judgment was rendered on the verdict. The only evidence tending to connect the defendant with the commission of the offence, was the testimony of one Dyson, as follows: "Myself and Rhodes *set* two horses in Missouri. We come up through Iowa, through Davis county, and stopped at defendant's. It was about 'sun up.' We rode up and spoke. Defendant was standing in the yard. He said to Rhodes, where did you *set* them horses? Rhodes answered, in Missouri. We then asked him, if we could get breakfast and our horses fed. He said, we could. We got off—our horses were put in the stable and fed. We then went into the house. Breakfast was got by Mrs. Upton. We—

that is, Rhodes and myself—laid down and slept awhile—
perhaps an hour. Defendant sent his boy to Jennings',
for a saddle for me. The last place I saw Jennings, was
over in Ottumwa, in custody of the law. When we got
up, Jennings was there, and told us, in the presence of de-
fendant, that that was a dangerous place, and we had bet-
ter leave there. We left after we got our breakfasts.
The word *set* means stealing. When Rhodes said, we *set*
the horses, he meant we stole them."

*Henry H. Trimble*, for the appellant.

*Samuel A. Rice*, Attorney General, for the State.

STOCKTON, J.— The charge in the indictment is, that
defendant aided one James Rhodes to conceal two horses
stolen from Michael Boatman, knowing the same to be
stolen. All the evidence given on the trial is embodied
in the record, and upon examination of the same, we are
satisfied that defendant was convicted upon insufficient
testimony, and that the motion for a new trial was im-
properly over ruled. The only evidence tending to con-
nect the defendant with the commission of the offence, is
given by Thomas Dyson, who, on his examination, testi-
fied that the horses that defendant is charged with aiding
to conceal, were stolen by witness and Rhodes, in the state
of Missouri; that in passing through Davis county, they
stopped at defendant's house; that on being inquired of
by him, they told him that the horses were stolen; that
they got their breakfast and had their horses fed; and
that being advised by one Jennings, that they were at a
dangerous place, they went away as they came.

From the fact that Rhodes was found with the stolen
property in the state of Iowa, at a distance from the place
where it was stolen, the inference is sought to be drawn,
that he was attempting to elude pursuit and avoid discov-
ery, and by this means, prevent the owner from regaining
his horses; and the further inference is drawn, that de-

fendant, by giving him his breakfast, and feeding his horses, knowing them to be stolen, was aiding Rhodes to conceal them. It might be sufficient for us to say, that we do not think the word "conceal," as used in the statute, is intended to be used in any such sense as is sought to be given to it by the prosecution in this cause. The evidence does not show that the defendant assisted Rhodes to hide the property, in order to elude pursuit, or to avoid discovery. He did not invite or bring Rhodes and Dyson to his house; he did not ask them to stay; and did not hurry them off. All that he is shown to have done, is entirely consistent with innocence, admitting that what Dyson said is true, and that he is entitled to belief.

But Dyson is a principal with Rhodes, in the larceny of the property, and the concealment thereof, if either are shown. His testimony is that of an accomplice, and must be corroborated by evidence tending to connect defendant with the commission of the offence. It is not sufficient, if merely the concealment of the stolen property by Rhodes, be shown, and the circumstances thereof. In this case, there was no evidence but that of Dyson, that the horses were stolen, or that Rhodes was attempting to conceal them. And not only is the corroboration of his evidence wanting, but it is contradicted in essential particulars, by the evidence of the wife of defendant. Code; section 2998.

The judgment will be reversed and new trial granted.

Judgment reversed.